## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CR-0205-CVE** |
| | ) | |
| **IQBAL MAKKAR,** | ) | |
| **a/k/a Jack Singh,** | ) | |
| **a/k/a Iqbal Singh Makkar,** | ) | |
| **GUARAV SEHGAL,** | ) | |
| **a/k/a Ricky Sehgal,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

Now before the Court are Defendants' Joint Motion for a Hearing pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1990) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) (Dkt. # 31) and Defendants' Joint Motion to Dismiss Indictment and Supporting Memorandum of Law (Dkt. # 32). Defendants ask the Court to hold a pretrial hearing to determine the admissibility of the government's expert testimony. Dkt. # 31. They also seek dismissal of the indictment on the grounds that the indictment fails to state an offense and that the Controlled Substance Analogue Enforcement Act of 1986, 21 U.S.C. §§ 802(32) and 813 (CSAEA), is unconstitutional as applied to the facts of this case. Defendants request an evidentiary hearing on both motions.

### I.

On November 5, 2013, a grand jury returned an indictment charging defendants with conspiracy to distribute a controlled substance analogue (count one), possession of a controlled substance analogue with intent to distribute (count two), maintaining a drug-involved premises

(count three), and conspiracy to launder money (count four). Dkt. # 2. The indictment alleges that

beginning on or about November 1, 2011 and continuing until on or about January 31, 2013 the

defendants distributed and possessed with intent to distribute 1-(5-fluoro-pentyl)-1H-indol-3-yl

(2,2,3,3-tetramethylcyclopropyl) methanone (5-fluoro-UR-144, XLR 11), which is commonly

known as XLR11. The indictment states that XLR11 is a "controlled substance analogue as defined

in Title 21, United States Code, Section 802(32)" and that defendants distributed XLR11 "with

intent for human consumption, as provided for in Title 21, United States Code, Section 813." Dkt.

# 2, at 1-2. Under § 802(32), a controlled substance analogue is defined as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure
> of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous
> system that is substantially similar to or greater than the stimulant, depressant, or
> hallucinogenic effect on the central nervous of a controlled substances in schedule
> I or II; or
>
> (iii) with respect to a particular person, which such person represents or intends to
> have a stimulant, depressant, or hallucinogenic effect on the central nervous system
> that is substantially similar to or greater than the stimulant, depressant, or
> hallucinogenic effect on the central nervous system of a controlled substance in
> schedule I or II.

A controlled substance analogue is treated as a schedule I or II substance "to the extent intended for

human consumption . . . ." 21 U.S.C. § 813.

Defendants each made their initial appearance on November 19, 2013, and they appeared

with retained counsel. Dkt. ## 9, 12. The Court entered a scheduling order (Dkt. # 15), inter alia,

setting the case for trial on January 21, 2014. Defendants filed a joint motion for a continuance

under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and the Court granted defendants' motion.

The case is now set for trial on April 21, 2014. Defendants have filed pretrial motions seeking a

<u>Daubert</u> hearing to determine the admissibility of the government's proposed expert testimony, and they also ask the Court to dismiss the indictment. Dkt. ## 31, 32. The government has responded to both motions. Dkt. ## 33, 34. Defendants have filed a reply in support of their motion to dismiss. Dkt. # 35.

## II.

Defendants request a pretrial hearing to determine whether the government's expert witnesses should be permitted to testify at trial, but they have not made any specific arguments for the exclusion of the expert testimony that may be offered by the government. The government responds that a pretrial hearing is unnecessary, because the identification of controlled substances is not "shaky science" and this type of expert testimony is routinely admitted in drug cases. Dkt. # 34, at 4-8.

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court held that district courts must initially assess the admissibility of "scientific" expert testimony under Fed. R. Evid. 702. The Supreme Court extended the gatekeeper role of federal district courts to all expert testimony in <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999). In <u>Bitler v. A.O. Smith Corp.</u>, 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts when considering a <u>Daubert</u> challenge to the admissibility of expert testimony. First, the court should make a preliminary finding that the expert is qualified to testify. <u>Id.</u> at 1232-33. Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his/her conclusion and that the expert's opinion is based on a reliable factual basis. <u>Id.</u> at 1233. The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

(1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or

3

potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (citing Daubert, 509 U.S. at 593-94).  The Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions."  Id.  In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert.  Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Western R. Co., 346 F.3d 987, 992 (10th Cir. 2003).  Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.  This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'"  Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)).

Defendants ask the Court to hold a pretrial hearing "wherein the court, as well as the parties, can identify which scientific opinions, if any, be admitted."  Dkt. # 31, at 5.  Tenth Circuit precedent is clear that a district court must exercise its gatekeeper function, but a party does not have any entitlement to any particular method in which the Court performs this function.  United States v. Nacchio, 555 F.3d 1234, 1245 (10th Cir. 2009).  While a Daubert hearing may be preferable in some cases, such a hearing is not required and a Court may satisfy its gatekeeper function in other ways.  United States v. Blake, 284 Fed. App'x 530 (10th Cir. 2008);[1] see also Goebel, 215 F.3d at 1087 ("The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not mandated.").

---

[1]     Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

4

The government states that it intends to call three expert witnesses, and it has provided the Court with copies of the expert disclosures made to defense counsel under Fed. R. Crim. P. 16. See Dkt. # 34-1. Cornell Wilson, Jr. is a senior forensic chemist for the Drug Enforcement Agency (DEA), and he is responsible for analyzing substances submitted for examination. Id. at 11. The government states that Wilson will testify about his examination of certain substances and that he found XLR11 in the substances. Dkt. # 34, at 2. Michael L. Van Linn, Ph.D, is a drug science specialist for the DEA, and he will offer an expert opinion that XLR11 is substantially similar to 1-pentyl-3-(1-naphthoyl)indole, also known as JWH-018. Dkt. # 34-1, at 6. JWH-018 is a controlled substance under Schedule I of the Controlled Substances Act. 21 U.S.C. § 812(c). Dr. Linn examined current scientific literature and the chemical structure of the two substances, and he found only minor differences in the chemical structure of XLR11 and JWH-018. Id. at 6-7. Sandy G. Ghozland, Ph.D, is a drug science specialist for the DEA and she "continuously maintain[s] knowledge of the pharmacology of abused substances, particularly of opiods, hallucinogens, cannabinoids and stimulants." Id. at 1. Dr. Ghozalnd has reviewed current scientific literature and studies conducted by the National Institute on Drug Abuse, and she has determined that XLR11 "has cannabinoid-like pharmacological effects on the central nervous system that are substantially similar to the cannabinoid-like pharmacological effects on the central nervous system of JWH-018." Id. at 5.

The Court has reviewed defendants' motion, the government's response, and the attachments to the government's response, and finds that a pretrial hearing concerning the admission of expert testimony is not required in this case. Defendants concede that the proposed expert testimony is relevant and necessary to the jury's understanding of the criminal charges. Dkt. # 31, at 5. The

5

Court has also reviewed the evidence submitted by the government, and there does not appear to be any question that the proposed expert witnesses are qualified to testify on the matters for which their testimony would be offered.  Defendants were aware of the expert's qualifications to testify and the opinions they will offer at trial, but they have not asserted any specific challenge to the government's proposed expert testimony.  Instead, defendants are asking the Court to hold a Daubert hearing to determine generally what expert opinions the parties may offer at trial, even though defendants have not identified the basis for their challenge to the proposed expert testimony.  Defendants are aware of the experts' qualifications and, as the government has noted, the identification and comparison of chemical substances are not novel scientific issues.  Dkt. # 34, at 4.  At trial, the parties should notify the Court before they will call an expert witness to testify, and they should be prepared to make a record as to the qualifications and reliability of the proposed expert testimony.  If necessary, the Court will hold a hearing outside the presence of the jury and inquire into any relevant issues going to the qualifications of a proposed expert witness or the reliability of the methods used by that expert.  However, the Court will not hold a Daubert hearing to determine generally what expert testimony may or may not be admissible at trial absent any specific challenge to the admissibility to the proposed expert testimony.

### III.

Defendants argue that the indictment should be dismissed in its entirety because the indictment fails to state an offense and the CSAEA is unconstitutional as applied to the facts of this case.  Defendants request an evidentiary hearing on their motion to dismiss.  The government responds that an evidentiary hearing is unnecessary, and the motion to dismiss should be denied based solely on the allegations of the indictment.

**A.**

Defendants assert that the indictment fails to state an offense because it does not allege all of the essential elements of an offense under the CSAEA.  In particular, defendants claim that the indictment fails to notify them of the controlled substance for which XLR11 is a controlled substance analogue.  The government responds that the indictment alleges that XLR11 is a controlled substance analogue and the indictment incorporates the statutory definition of a controlled substance analogue, and this is sufficient to state the essential elements of the offense and provide notice to defendants of the charges against them.

Under Fed. R. Crim. P. 12(b)(3), a defendant may file a motion "alleging a defect in the indictment" at any time while the case is still pending.  When ruling on a motion to dismiss for failure to state an offense, the Court must consider only if the allegations of the indictment, if accepted as true, state an offense against the defendant.  United States v. Todd, 446 F.3d 1062, 1068 (10th Cir. 2006).  "[A]n indictment is considered sufficient 'if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy challenge."  United States v. Barrett, 496 F.3d 1079, 1092 (10th Cir. 2007).  "It is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  United States v. Doe, 572 F.3d 1162 (10th Cir. 2009) (quoting United States v. Redcorn, 528 F.3d. 727, 733 (10th Cir. 2008)).  "The test of the validity of the indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it

7

conforms to the minimal constitutional standards." United States v. Gama-Bastidas, 222 F.3d 779,

785 (10th Cir. 2000) (quoting United States v. Fitzgerald, 89 F.3d 218, 222 (5th Cir. 1996)).

Defendants argue that the indictment fails to state an offense, because all of the charges are

based on allegations that defendants possessed with intent to distribute or distributed a controlled

substance analogue and the indictment fails to specifically identify the controlled substance for

which XLR11 is an analogue.  Defendants are correct that most federal courts that have interpreted

the CSAEA to require the government to show that the controlled substance analogue at issue

satisfies paragraph (i) and paragraphs (ii) or (iii) of § 802(32)(A) in order to sustain a conviction.

See United States v. Turcotte, 405 F.3d 515, 522 (7th Cir. 2005); United States v. Lane, 2013 WL

3199841 (D. Ariz. June 24, 2013); United States v. Fedida, 942 F. Supp. 2d 1270, 1277 (M.D. Fla.

2013); United States v. Vickery, 199 F. Supp. 2d 1363 (N.D. Ga. 2002).  However, defendants are

challenging the sufficiency of the indictment, and they have cited no cases for the proposition that

the government must specifically identify in the indictment the schedule I or II controlled substance

for which the substance at issue is an analogue.  This argument has been rejected by other courts in

cases in which the indictment tracks the statutory language of the CSAEA but fails to identify the

specific schedule I or II substance for which the substance is an analogue.  See United States v.

Davis, 2013 WL 6499533 (W.D.N.C Dec. 11, 2013); United States v. Carlson, 2013 WL 5125434

(D. Minn. Sep. 12, 2013). In this case, the indictment incorporates the statutory definition of a

controlled substance analogue and defendants are on notice that they are charged with four offenses

concerning the possession, distribution, or financial transactions with the proceeds from the

distribution of "a controlled substance analogue as defined in Title 21, United States Code, Section

802(32)."  Defendants could have filed a motion for bill of particulars if they required clarification

of the specific controlled substance for which XLR11 is allegedly an analogue.  However, the indictment clearly alleges that XLR11 is a controlled substance analogue under § 802(32), and this is sufficient for the offenses alleged against defendants.

**B.**

Defendants argue that the CSAEA is unconstitutionally vague as applied to the facts of this case, because a reasonable person would not be able to determine whether XLR11 is a controlled substance analogue and the CSAEA fails to limit the discretion of law enforcement officers. Defendants also argue that enforcement of the CSAEA would result in a violation of the Ex Post Facto Clause, because XLR11 was not listed as a controlled substance during the time period the alleged offenses occurred.  The government responds that the CSAEA affords a reasonable person adequate notice that distributing or possessing with intent to distribute an analogue of JWH-018 is a crime, and the CSAEA is not void-for-vagueness as applied to the facts of this case.  As to the Ex Post Facto argument, the government states that the issue is not whether XLR11 was specifically listed as a "controlled substance" but, instead, whether it was a "controlled substance analogue" when the offenses occurred.

The first issue the Court must resolve is whether a hearing is required in order to rule on defendants' constitutional challenge to the CSAEA.  Defendants argue that it will be necessary for the Court to hold a pretrial hearing, because federal district courts faced with void-for-vagueness challenges to an indictment frequently have hearings to resolve this issue.  However, this is not the approach favored in the Tenth Circuit.  In <u>United States v. Pope</u>, 613 F.3d 1255 (10th Cir. 2010), the Tenth Circuit found that Rule 12 "authorizes the district court to resolve before trial only those motions 'that the court can determine without a trial of the general issue.'" <u>Id.</u> at 1259.  The "general

9

issue" is the guilt or innocence of the defendant. Id. "If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." Id. A district court should hold a pretrial hearing to resolve a motion to dismiss in the limited circumstances where "'[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts,' and [3] the district court can determine from them that, '*as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt." Id. at 1260-61 (quoting United States v. Hall, 20 F.3d 1084, 1088 (10th Cir. 2010)).

The Court has reviewed defendants' motion to dismiss and finds that an evidentiary hearing should not be held to resolve defendants' constitutional arguments.  Even though defendants' arguments are primarily framed as a void-for-vagueness challenge, the arguments asserted by defendants are intertwined with their guilt or innocence and a hearing would effectively be a mini-trial of the criminal charges against defendants.  The evidence presented would not be of substantial assistance to the Court in resolving the constitutional challenges raised by defendants, and it would be a waste of resources to hold a lengthy pretrial hearing on the matters of law that can appropriately be considered in a pretrial motion to dismiss.  The Court will rule on the motion to dismiss based solely on the allegations of the indictment, but the Court will assume that any factual allegations stated in defendants' motion to dismiss are true only for the purpose of this Opinion and Order. However, defendants may renew their arguments during and/or after trial and the Court will consider the evidence presented at trial if defendants choose to renew their constitutional challenges to the indictment.

Defendants argue that the CSAEA does not provide adequate notice to a reasonable person that XLR11 is a controlled substance analogue, and they claim that the statute is void-for-vagueness as applied to the facts of this case.  Under the Due Process Clause of the Fifth Amendment, a criminal statute may be found unconstitutionally vague if it provides "no standard whatever by which criminality could be ascertained." Parker v. Levy, 417 U.S. 733, 755 (1974).  A statute is "impermissibly vague 'if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.'" United States v. Franklin-El, 554 F.3d 903, 910 (10th Cir. 2009).  Another basis upon which a statute can be declared unconstitutionally vague is that the statute "authorizes or encourages arbitrary and discriminatory enforcement." Id.  A vagueness challenge that does not implicate First Amendment rights "must be examined in light of the facts of the case at hand." United States v. MacKay, 715 F.3d 807, 824 (10th Cir. 2013).  In the context of a vagueness challenge to a criminal statute, a court must consider whether "the criminal provision is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" Parker, 417 U.S. at 755.

Defendants ask the Court to compare the chemical structure of XLR11 and JWH-018 and make a determination of whether the two substances are substantially similar at a chemical level. They argue that a reasonable person comparing the chemical structure of XLR11 and JWH-018 would not know that XLR11 is an analogue of JWH-018.  Dkt. # 32, at 8.  They also claim that XLR11 does not metabolize into JWH-018 upon ingestion, and this is an additional indication that XLR 11 and JWH-018 are not substantially similar. Id. at 10.  Defendants also cite an alleged lack of notice in congressional or DEA records that XLR11 would be considered a controlled substance

analogue, because XLR11 was not listed as a banned substance until April 12, 2013. Id. at 10-11. Finally, defendants argue that experts disagree on the pharmacological effects of XLR11 and a person of ordinary intelligence could not have determined that XLR11 was an analogue of JWH-018. Id. at 12. The government responds that the CSAEA contains a scienter requirement that requires the government to prove that defendants knew that they were distributing a controlled substance analogue, and this "ameliorates" any vagueness concerns that might be raised by the disagreement among experts in the scientific community. Dkt. # 33, at 25. The government also argues that it will present expert testimony that XLR11 is an analogue for JWH-018, and the Court should refrain from resolving factual issues that go the guilt of defendants on a pretrial motion to dismiss.

To obtain a conviction under the CSAEA, the government must show that the substance at issue is a controlled substance analogue and that the defendants knew they were engaging in illegal conduct by distributing the substance. United States v. Roberts, 363 F.3d 118, 123 (2d Cir. 2004). However, the exact nature of the scienter requirement is not defined in the CSAEA, and court are not uniform in their formulation of the intent necessary for a conviction under the statute. Lane, 2013 WL 3199841 at *3. Although the language of the CSAEA is "not a model of clarity," courts agree that there is a scienter requirement, and at least one court has found that an essential element of the offense is that "the defendant knew the substance in question was a controlled substance analogue." Turcotte, 405 F.3d at 527; see also United States v. Sullivan, 714 F.3d 1104 (8th Cir. 2013) (listing whether the defendant "knew he was in possession of a controlled substance analogue" as an element of the offense). Regardless of the intent standard, the inclusion of a scienter requirement tends to mitigate any vagueness inherent in a statute, and this tends to negate any

12

argument that a defendant lacked notice that his conduct could be deemed criminal.  Bushco v. Shurtleff, 729 F.3d 1294, 1306-07 (10th Cir. 2013); United States v. Franklin-El, 554 F.3d 903, 911 (10th Cir. 2009).

The Court finds that defendants' arguments concerning the chemical similarity of XLR11 and JWH-018 cannot be conclusively resolved on a pretrial motion to dismiss, because the Court would be required to determine whether XLR11 is an analogue of JWH-018 and whether defendants actually knew they were distributing a controlled substance analogue.  These are factual issues that are within the province of the jury.  It is clear that both parties intend to offer conflicting expert testimony about the chemical structure of XLR11 and JWH-018 and that their experts disagree.  This shows that the parties believe that expert testimony is required to resolve this factual issue and that there is some scientific evidence that XLR11 is an analogue of JWH-018.  To rule in favor of defendants, the Court would have to review the proposed expert testimony, reject the government's expert testimony, and make a factual finding in favor of defendants.  That is not the purpose of a pretrial motion to dismiss, because defendants are effectively asking for a pretrial ruling that they are not guilty of the charges contained in the indictment.  The Court also notes that disagreement between experts on the chemical similarities of two substances does not conclusively show that a statute is void for vagueness, because experts in the field regularly disagree about the similarity of chemical substances.  Klecker, 348 F.3d at 71-72.  In the context of the CSAEA, the purpose of the statute, in part, is to stay ahead of the designer drug market and criminalize the distribution of new substances that are unknown to the DEA, and "there will inevitably be some period of time before experts can determine conclusively a substance's pharmacological effects."  Fedida, 942 F. Supp. 2d at 1281 n.8.  Allowing a defendant to prevail on a vagueness challenge to charges under the

CSAEA based only on the disagreement of experts would undermine the purpose of the statute, and the Court does not find that this is a basis to dismiss the criminal charges against defendants.

Defendants' argument that XLR11 was not listed as a controlled substance during the time of the conspiracy also misses the mark.  Defendants are not charged with distributing a "controlled substance" but, instead, they are accused of distributing a controlled substance analogue.  Although the first public notice that XLR11 might be considered a controlled substance was posted by the DEA on April 12, 2013, the DEA provided public notice in November 2010 that it would seek to have JWH-018 listed as a banned substance.  Schedules of Controlled Substances: Temporary Placement of Three Synthetic Cannabinoids into Schedule I, 78 Fed. Reg. 21858-01 (Apr. 12, 2013); Schedules of Controlled Substances: Temporary Placement of Five Synthetic Cannabinoids into Schedule I, 75 Fed. Reg. 71635-01 (Nov. 24, 2010).  For the purpose of a controlled substance analogue case, the notice issue turns on whether the defendant knew that he possessed an analogue of a controlled substance, and the public record is clear that the DEA gave public notice during the time of the alleged conspiracy that it considered JWH-018 to be a controlled substance.  The subsequent decision to have XLR11 temporarily added to the list of controlled substances does not show that defendants lacked notice that they could be prosecuted for crimes involving a controlled substance analogue.

Defendants argue that the CSAEA fails to restrict the discretion of law enforcement, because experts disagree on the similarity of XLR11 and JWH-018 and there is a substantial risk of discriminatory or arbitrary enforcement of the CSAEA.  As the Court has already noted, the disagreement of experts does not establish that a statute is unconstitutionally vague for lack of notice, and the Court also rejects defendants' argument that disagreement among experts raises a

14

risk of arbitrary law enforcement.  A person of ordinary intelligence could appreciate a risk that his conduct could be deemed criminal if some experts found a substance to be a controlled substance analogue and that person was distributing the substance for human ingestion.  Roberts, 363 F.3d at 124-25.  Law enforcement officials could also reasonably believe that a substance is a controlled substance analogue even if the scientific community has expressed some disagreement on the subject.  Id. at 125-26.   The Court also notes that the indictment alleges that defendants "knowingly" and "intentionally" possessed with intent to distributed and distributed a controlled substance analogue, and for the purpose of this Opinion and Order the Court will assume this allegation is true. Dkt. # 2.  A void-for-vagueness claim is necessarily unsuccessful if the defendant had actual notice that his conduct could be illegal.  Farid v. Ellen, 593 F.3d 233, 243 (2d Cir. 2010).  Based on the allegations of the indictment, the Court finds that defendants have not shown that the CSAEA authorizes arbitrary or discriminatory enforcement.

Finally, defendants argue that the conduct alleged in the indictment was not criminal during the times which the conspiracy occurred, and they claim that the Ex Post Facto Clause bars prosecution of the charges against them.  The Ex Post Facto Clause prohibits Congress or any state from punishing an act which was not punishable when it occurred or imposing additional punishment than what was prescribed at the time of the offense.  Weaver v. Graham, 450 U.S. 24, 28 (1981).  "For a law to be ex post facto, 'it must be retrospective, that is it must apply to events before its enactment, and it must disadvantage the offender affected by it.'" United States v. Raymer, 941 F.2d 1031, 1046 (10th Cir. 1991).  Defendants argue that XLR11 was not scheduled as a controlled substance until the alleged conspiracy was completed, and they are being prosecuted for something that was not a crime when the conspiracy allegedly occurred.  Defendants would be

15

correct if the government had charged them with the distribution of a "controlled substance." However, they are charged with distributing and possessing with intent to distribute a controlled substance analogue of JWH-018, and JWH-018 was a controlled substance when the conspiracy occurred.  In other words, distributing an analogue of JWH-018 was a crime during the time period alleged in the indictment. See  Raymer, 941 F.2d at 1046 (the defendant could be prosecuted for distributing a controlled substance analogue, MDMA, as of the date the CSAEA was enacted, even though the scheduling of MDMA as a controlled substance was invalidated for the time period alleged in the indictment).  Defendants have not shown that they are being prosecuted under a retrospective or ex post facto law.

IT IS THEREFORE ORDERED that Defendants' Joint Motion for a Hearing pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1990) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) (Dkt. # 31) and Defendants' Joint Motion to Dismiss Indictment and Supporting Memorandum of Law (Dkt. # 32) are **denied**.

DATED this 9th day of April, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

16